## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

RHONDA CAIN,

        **Plaintiff,**

        **v.**

BIRGE & HELD PROPERTY
MANAGEMENT, LLC,

        **Defendant.**

**Case No. 2:23-cv-695**
**Judge Edmund A. Sargus, Jr.**
**Magistrate Judge Kimberly A. Jolson**

### OPINION AND ORDER

This matter is before the Court on Plaintiff Rhonda Cain's Motion for Partial Summary Judgment (Cain Mot., ECF No. 59) and Defendant Birge & Held Property Management, LLC ("B&H")'s Combined Brief in Opposition to Plaintiff Rhonda Cain's Motion for Partial Summary Judgment and Cross-Motion for Summary Judgment (B&H Mot., ECF No. 66).

For the reasons stated in this Opinion and Order, the Court **GRANTS IN PART** and **DENIES IN PART** Ms. Cain's Partial Motion for Summary Judgment (ECF No. 59) and **DENIES** Birge & Held Property Management, LLC's Cross-Motion for Summary Judgment (ECF No. 66). The Court concludes that genuine issues of material fact remain regarding Ms. Cain's negligence and negligence *per se* claims and that Ms. Cain is not entitled to summary judgment on most of B&H's affirmative defenses.

### BACKGROUND

Ms. Cain's sister, Pamela White, lives in a second-floor apartment at the Hidden Creek Apartment complex in Columbus, Ohio ("Hidden Creek"). (White Aff., ECF No. 58, ¶¶ 3–5.) Under an agreement with AndMark Hidden Creek Apartments, LLC, the company that owns Hidden Creek, B&H started managing the complex on August 1, 2021. ("Management

Agreement," ECF No. 4, PageID 43–52.) Under the Management Agreement, B&H had the duty "To repair and maintain the Project in a neat and first-class manner." (*Id.* PageID 44.)

The only way to reach the entrance to Ms. White's apartment was to use an exterior staircase attached to the building. (White Dep., ECF No. 65-1, 46:2–12.) The staircase included two flights of stairs: one from the ground leading up to a small landing area, and a second leading up to the second floor. (*Id.* at 10:12–18.) The staircase was enclosed by a set of wood walls on either side, meaning a person could not see the stairs from the ground floor unless they were standing in front of the staircase. (*See* Staircase Wall Photo, ECF No. 65-2.) This case concerns the failure of the second-to-last step on the flight of stairs connected to the ground floor.

## I. Ms. Cain's Fall

Ms. Cain visited Ms. White at Hidden Creek on August 31, 2021, arriving around 9:00 PM. (Cain Dep., ECF No. 66, 18:16–20:7.) She ascended the staircase to the second floor and noticed that one or two of the steps were loose and but did not move out of place. (*Id.* 26:21–27:5; Cain Aff., ECF No. 33, ¶ 7.) About an hour later, Ms. Cain descended the steps after leaving Ms. White's apartment. (Cain Aff., ¶ 8.) As she approached the end of the staircase, she fell suddenly to the sidewalk. (*Id.* ¶ 9.) Ms. Cain testified that, when she stepped on the second-to-last step, it "went forward and put me forward, and I was on the ground." (Cain Dep., 32:7–8.) Ms. Cain was treated by emergency medical personnel and transported by ambulance to a hospital, where she was diagnosed with multiple fractures of her left hip. (Cain Aff., ¶¶ 10–11.) After the fall, she underwent visits to the emergency room, advanced imaging, physical therapy, and transforaminal epidural steroid injections. (Stephens Decl., ECF No. 71-1, PageID 1641–42.)

Ms. White testified that she exited her apartment soon after Ms. Cain exited and heard Ms. Cain screaming at the bottom of the staircase. (White Dep., 9:7–14.) She came down the stairs to

2

help and saw the second-to-last stair "sideways" and "at an angle" up against the staircase's inner wall. (*Id.* at 9:7–14, 12:2–4.) She picked up the stair and threw it to the side because she "did not want to fall on it." (*Id*. at 12:4–7.) Ms. White testified that she did not immediately submit a work order for the missing stair after the incident because "anybody can see it" and because a showroom apartment was located nearby. (White Dep., 24:9–17, 25:2–6.)

According to Rebecca Engholm, a B&H regional manager, Ms. White reported the missing stair to B&H on September 10, 2021. (Engholm Dep., ECF No. 17-1, 135:4–6.) Ms. Engholm visited Hidden Creek the same day and took photographs of the area. (*Id.* at 122:4–24.) Chris Beatty, a B&H regional maintenance supervisor, installed a new stair that day. (*Id.*; *see* New Stair Photo, ECF No. 17-14.)

## II. Lighting in the Staircase

A light fixture provides light for the staircase from the wall above the landing at the top of the first flight of stairs. Ms. Cain and Ms. White testified that on August 31, 2021, the light fixture was hanging by wires from the wall, out of place, and that it was not emitting any light. (Cain Dep., 33:1–22; White Dep. 19:2–13.) Ms. White testified that some light from light posts in the parking lost was "shining through" to the staircase area. (White Dep. 19:14–20:12.) According to Ms. Cain, the stairs were "dimly lit" by the parking lot light, and she could see where each step began and ended. (Cain Dep., 44:19–46:18.) According to Ms. Engholm, B&H was not aware of any issues with the light until September 10, 2021. (Engholm Dep., 97:1–9.) Mr. Beatty reaffixed the light to the wall that day, and Ms. Engholm testified that "it was functioning" at that time. (*Id.* at 67:22–68:7.) A photograph taken after the replacement of the missing step shows the light fixture reattached to the wall. (*See* ECF No. 17-13.)

Attached to her affidavit, Ms. Cain included a photograph of the light fixture hanging from

the wall by wires (ECF No. 33, PageID 1327; *see* ECF No. 17-5) and a closer-up photograph of the fixture hanging against the wall (ECF No. 33, PageID 1328; *see* ECF No. 17-6). She stated that these photos depict the condition of the fixture on August 31, the night she fell. (Cain Aff., ¶ 6.) Ms. White stated that the light "had been broken and not working since I moved into the apartment" in January 2021. (White Aff. ¶¶ 3, 7.)

### III.     Evidence of the Staircase's Condition

Before Ms. Cain's fall, neither Ms. White nor Ms. Cain notified B&H about any problems with the staircase. (White Dep., 26:9–12; Cain Dep. 23:8–11.) Ms. White recalled that, before the incident, the second-to-last step was "worn" and that when she walked on it, it would creak like a floorboard in an old house but would "[n]ot really move." (White Dep., 27:16–20.) She also testified that no steps were loose and that no steps looked loose. (*Id.* at 21:8–11.) Ms. Cain stated that on August 31, she noticed that one or two of the steps were loose and moved slightly under her foot. (*Id.* 26:21–27:5; Cain Aff., ¶ 7.)

The Parties entered in the record several photographs of the broken step, the staircase, and the surrounding area that were taken after the incident on August 31, 2021. A photograph taken by Ms. White two or three days after Ms. Cain's fall shows the bottom flight of stairs leading up to Ms. White's apartment with the second-to-last step completely removed. (Staircase Photo, ECF No. 17-11; White Dep., 23:8–23, 49:16–51:24 (noting that she took photos of the staircase and surrounding area two to three days after Ms. Cain's injury)). The Staircase Photo also shows wear on the steps, including faded paint. (Staircase Photo.) Another photograph taken by Ms. White depicts two pieces of wood that Ms. Cain recalls as the second-to-last step split in half, longwise, laying in the mulch next to the staircase. (Broken Step Photo, ECF No. 17-12; Cain Dep., 49:14–50:14.) Ms. White also took close-up photos of other steps in the staircase depicting wood dust

and spots that she claims are bugs. (ECF Nos. 17-9, 17-10; White Dep., 54:4–58:21.) She also testified that there was mold on the railings and on some of the steps. (White Dep., 41:14–42:8; *see* Rail Photo, ECF No. 17-8.) B&H employees took similar photos on or around September 10 depicting the staircase with the missing step (ECF No. 17-16, PageID 373) and the split stair (ECF No. 17-16, PageID 375).

Additionally, Ms. Cain submitted an affidavit and "Architectural and Human Factors Expert Witness Opinion" by Richard L. Zimmerman, a registered professional architect with experience in human factors design work. (Zimmerman Report, ECF No. 71-2.) Mr. Zimmerman reviewed the depositions and photographs and concluded that "conditions at the incident location were deficient, and violated Codes and reasonable standards, which directly and proximately caused the fall and injury of Rhonda Cain, and that there was a failure to meet the appropriate standard of care" by B&H. (*Id.* PageID 1666.) He described the actions that should be taken as part of a reasonable safety inspection and stated that "the unsafe, deficient, and non-Code-complaint conditions of the incident staircase were known, or should have been known, to [B&H] for a period of many months, if not years." (*Id.* PageID 1665.)

## IV. B&H Employee Inspections and Awareness

On August 2, 2021, Ms. Engholm and three other B&H employees visited Hidden Creek to hand out notices that B&H was the new property manager. (Engholm Dep., 17:21–19:5.) Ms. Engholm stated that "part of the process when we deliver notices at any point in time is to visually inspect items and make note of those items," including inspection of "common areas," but she added that she and her staff did not "specifically set out to inspect stairwells" during the August 2 visit. (*Id.* at 39:21–40:15.) Tallia McCormick, a regional property manager for B&H, personally walked up and down the staircase to Ms. White's apartment to distribute notices on August 2.

(McCormick Dep., ECF No. 19-1, 18:6–21:19.) She did not notice any movement in the steps as she walked on them and did not observe wood rot, mold, or cracks in the steps, but she did observe that paint had faded away. (*Id.*)

Mr. Beatty viewed the photographs described above. Regarding a photograph of the top of the staircase's wall, Mr. Beatty observed that the wood was "deteriorating" and "starting to rot" at a joint and had mildew on it. (Beatty Dep., ECF No. 21-1, 51:23–52:13.) Viewing Ms. White's photographs of wood dust and possible insects on the steps, Mr. Beatty observed that the photos showed potential pest issues, but he was not sure whether further investigation would have been necessary. (*Id.* at 54:13–58:23.) Mr. Beatty observed that the joint decay and wood rot conditions he observed in the staircase wall railing "could happen in just a matter of months, or what it looks to be more like years." (*Id.* at 53:2–6.)

B&H had a policy that "[o]ne or more team members will walk the grounds daily and contact the Maintenance Department or Community Manager to report any problems." (ECF No. 17-15, PageID 340.) Ms. Engholm stated that visual inspection of common areas is to be completed "daily" and that "more in-depth inspection of things . . . traditionally happen at least twice a year." (Engholm Dep., 151:17–23.)

## V.    Procedural History

Ms. Cain brought claims against B&H in February 2023 for "contractual violations," "negligence/malice," and Landlord and Tenant Statutory Violations under Ohio Revised Code § 5321.04. (Compl., ECF No. 1.) The Court granted a motion filed by B&H to dismiss the contract claim because Ms. Cain lacked standing to bring that claim. (ECF No. 43, PageID 1377.) Ms. Cain filed a Motion to Amend the Complaint, seeking to refile the contract claim and to add factual allegations to support it. (ECF No. 48.) The Court denied Ms. Cain's Motion to Amend, concluding

6

that granting the motion would be futile because Ms. Cain lacked standing as a third-party beneficiary even under the proposed amended complaint and because the additional factual allegations were otherwise unnecessary. (ECF No. 78.)

Ms. Cain filed a Motion for Partial Summary Judgment on the issues of breach and duty only, both regarding her claims for common law negligence and negligence *per se* due to statutory violations. (Cain Mot., ECF No. 59.) B&H filed a Combined Brief in Opposition to Plaintiff Rhonda Cain's Motion for Partial Summary Judgment and Cross-Motion for Summary Judgment. (B&H Mot., ECF No. 66.) B&H moves for summary judgment on both Ms. Cain's negligence and negligence *per se* theories of liability based on the absence of duty and breach. (*Id.*) Ms. Cain filed a combined response to B&H's Motion and reply to B&H's opposition brief. (Cain Reply, ECF No. 71.) B&H filed a reply. (B&H Reply, ECF No. 75.)

In April 2024, Ms. Cain filed a separate case in this Court against AndMark Hidden Creek Apartments, LLC ("AndMark") the owner of Hidden Creek, alleging substantially similar facts and claims. (*See Cain v. AndMark Hidden Creek Apartments, LLC*, S.D. Ohio Case No. 2:24-cv-1787, ECF No. 1.) The Court lacked diversity jurisdiction over that case because AndMark's sole member and manager, AndMark Investment Fund IV, LLC, had an Ohio-citizen LLC member. (*See* S.D. Ohio Case No. 2:24-cv-1787, ECF No. 60.) Accordingly, the Court dismissed Ms. Cain's claims against AndMark. (*Id.*)

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an

7

element that is essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993). To avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Parties cross-moved for summary judgment. Each party, as a movant, bears the burden of meeting the summary judgment standard. *Ray v. McCloud*, 507 F. Supp. 3d 925, 930 (S.D. Ohio 2020) (Watson, J.). The failure of one party to carry its burden does not mean that the other party should prevail on its motion; rather, the Court should "evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party." *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994).

## ANALYSIS

Ms. Cain invoked the Court's diversity jurisdiction under 28 U.S.C. § 1332. (Compl., ¶ 3.) As a federal court exercising diversity jurisdiction over state-law claims, the Court, sitting in Ohio, applies Ohio law. *See, e.g.*, *Comm'r of Internal Revenue v. Est. of Bosch*, 387 U.S. 456, 464–65, (1967); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 68 (1938). "In diversity cases, the federal courts must apply state law 'in accordance with the then controlling decision of the highest state court.'" *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 517 (6th Cir. 2001) (quoting *United States v. Anderson Cnty., Tennessee*, 761 F.2d 1169, 1173 (6th Cir. 1985)). But "[i]f the forum state's highest court has not addressed the issue," a court's task is to "ascertain from all available data, including the decisional law of the state's lower courts, what the state's highest court would decide if faced with

the issue." *Id.*

Ms. Cain brings negligence and negligence *per se* claims. (Compl., ¶¶ 23, 26.) To recover under a theory of negligence, a plaintiff must demonstrate that there was a duty, a breach of that duty, proximate causation, and injury. *See Menifee v. Ohio Welding Products, Inc.*, 472 N.E.2d 707, 710 (Ohio 1984). Where a plaintiff establishes negligence *per se* through a defendant's violation of certain statutes, the plaintiff need only prove proximate cause and damages. *Sikora v. Wenzel*, 727 N.E.2d 1277, 1280–81 (Ohio 2000). But a defendant is "excused" from liability if the defendant had no actual or constructive notice of the conditions giving rise to the statutory violation that triggered negligence *per se*. *Id.* at 1281. This notice requirement also applies to common law negligence claims. *See Roundtree v. Byrd*, __ N.E.3d __, 2024 WL 4866321, *3 (2nd Dist. Ohio Ct. App. Nov. 22, 2024).

In their cross-motions for summary judgment, the Parties dispute duty, breach, and whether B&H had constructive notice of the allegedly unsafe conditions leading to Ms. Cain's fall and injuries.

## I. Duty and Breach

Ms. Cain argues that B&H had a duty to conduct inspections that, if performed, would have revealed the unsafe condition of the stair that allegedly failed and caused her injury. (Cain Mot., PageID 1513–18.) She raises three sources of that duty: Ohio's Landlord-Tenant Act of 1974 ("the Act"), common law, and B&H's contract with the proper owner. (*Id.*)

### A. Sources of Duty

"The existence of duty is a legal question for the court to determine." *Nye v. CSX Transp., Inc.*, 437 F.3d 556, 563 (6th Cir. 2006) (citing *Mussivand v. David*, 544 N.E.2d 265, 270 (1989)). As a threshold matter, Ms. Cain's status as a guest, rather than a tenant, makes no difference in the

9

duty inquiry in this case. Under Ohio law, "a landlord owes the same duties to persons lawfully upon the leased premises as the landlord owes to the tenant." *Shump v. First Continental-Robinwood Assoc.*, 644 N.E.2d 291, 296 (Ohio 1994).

"The Landlord Tenant Act of 1974 ["the Act"] generally governs the obligations and remedies of parties to rental agreements and leases of residential premises in Ohio." *Aetna Cas. & Sur. Co. v. Neff*, 30 F. Supp. 2d 990, 994 (S.D. Ohio 1998) (citing *Shroades v. Rental Homes, Inc.*, 427 N.E.2d 774, 777 (Ohio 1981)). Under the Act, in relevant part, a landlord "shall do all of the following:"

> (1) Comply with the requirements of all applicable building, housing, health, and safety codes that materially affect health and safety;
>
> (2) Make all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition;
>
> (3) Keep all common areas of the premises in a safe and sanitary condition;

Ohio Rev. Code § 5321.04(A).

As the property manager of Hidden Creek, B&H is treated as a landlord under the Act. *See* Ohio Rev. Code § 5321.01(B) ("'Landlord' means the owner, lessor, or sublessor of residential premises, the agent of the owner, lessor, or sublessor, or any person authorized by the owner, lessor, or sublessor to manage the premises or to receive rent from a tenant under a rental agreement."). As a lawful guest of the tenant, Ms. Cain was owed the same duties as a tenant under the Act. *See Shump*, 644 N.E.2d at 296–97.

Additionally, although the Act "clearly abrogated the common law distribution of liability, it does not provide the wholly exclusive remedy available to landlords and tenants." *Aetna*, 30 F. Supp. 2d at 994; *see Shroades*, 427 N.E.2d at 777 (explaining that the remedies provided under the Act are cumulative). Accordingly, a landlord under the Act has common law duties in addition

to those stated in the Act. *Aetna*, 30 F. Supp. 2d at 994. Last, under the Management Agreement, B&H has the obligation "[t]o repair and maintain the Project in a neat and first-class manner." (Management Agreement, PageID 44.)

### B. Duties and Notice

The Parties dispute the extent of B&H's duties regarding the allegedly defective step. B&H argues it has no affirmative duty to inspect the staircase in the manner that would have revealed any unsafe conditions, while Ms. Cain argues that B&H's duties under the Act, common law, and the Management Agreement encompass inspection obligations that would have revealed the danger to Ms. Cain.

#### i. Landlord Tenant Act Duty

Under the Act, "a landlord is liable for injuries, sustained on the demised residential premises, which are proximately caused by the landlord's failure to fulfill the duties imposed by [Ohio Revised Code § 5321.04." *Shroades*, 427 N.E.2d at 777. Several Ohio courts have held that "[the Act] sets forth no affirmative duty on the landlord to inspect the premises and [that] no such duty was recognized by the Ohio Supreme Court" in cases interpreting the Act. *Avila v. Gerdenich Realty Co.*, 2007 WL 4216972, *2 (6th Dist. Ohio Ct. App. Nov. 30, 2007) (holding that no duty arose where there was no evidence that landlord knew or should have known that garage door bolts were loose) (citing *Shroades*, 427 N.E.2d 774; and *Sikora*, 727 N.E.2d 1277); *see Boyd v. Hariani*, No. 22500, 2005 WL 2087824, *5 (9th Dist. Ohio Ct. App. Aug. 31, 2005) (holding that no specific inspection requirement applied and that reasonable inspections of a staircase were made based on inspection reports); *Butler v. Wyndtree Hous. Ltd. P'ship*, No. CA2011-03-056, 2012 WL 37535, at *6 (12th Dist. Ohio Ct. App. Jan. 9, 2012).

Rather, Ohio courts interpret the extent of a landlord's duties under the Act in terms of

whether the landlord had actual or constructive notice of the defective condition in question. *See Butler*, 2012 WL 37535, at *6. According to the Ohio Supreme Court, even though a violation of § 5321.04(A)(1), (2), or (3) constitutes negligence *per se* (thus proving duty and breach), "[the] landlord will be excused from liability under either section if he neither knew nor should have known of the factual circumstances that caused the violation." *Sikora*, 727 N.E.2d at 1282; *Mann v. Northgate Invs., LLC*, 5 N.E.3d 594, 602 (Ohio 2014) (extending the holding of *Sikora* to a landlord's obligation under § 5321.04(A)(3)). Ohio courts thus intertwine the constructive notice inquiry with the question of a landlord's duties under the Act and breach of those duties.

### ii. Common Law Duty

"At common law, the landlord must exercise reasonable care to keep the premises in a reasonably safe condition." *Roundtree v. Byrd*, __ N.E.3d __, 2024 WL 4866321, *3 (2nd Dist. Ohio Ct. App. Nov. 22, 2024). The Parties dispute whether this general common law duty includes a duty to inspect the premises in a manner that would have revealed the allegedly unsafe conditions of the staircase. As part of the common law inquiry, just like under the Act, "[a]ctual or constructive notice is a prerequisite to the landlord's duty." *Id.*

### iii. Management Agreement and Policy Duties

Furthermore, the Management Agreement creates no duty that exceeds those existing under the Act or under common law. B&H's duty under the Management Agreement is "[t]o repair and maintain the [Property] in a neat and first-class manner," a standard that the document does not define. (Management Agreement, PageID 44.) The plain text of this term, although ambiguous, does not add specific requirements that exceed a landlord's obligations under the Act to make necessary repairs and to keep common areas in a safe and sanitary condition. *See Szewczyk v. Century Fed. Credit Union*, No. 110822, 2022-Ohio-1683, ¶ 20 (8th Dist. Ohio Ct. App. May 19,

12

2022) ("A court may not put words into a contract that the parties themselves failed to include."). Similarly, the Court finds that the term imposes no duty beyond the standard of "reasonable care" required under common law.

Last, Ms. Cain provides no legal support for her contention that B&H's policy that "[o]ne or more team members will walk the grounds daily" to identify "problems" establishes a distinct and specific legal duty owed to Ms. Cain to carry out those policies. (*See* ECF No. 17-15, PageID 340.) Rather, B&H's policies, and its practices in carrying out those policies, affect the question of breach—whether B&H exercised reasonable care, kept common areas safe, and made necessary repairs. A factfinder might also rely on evidence of B&H's policies and practices, at least in part, to conclude that B&H had actual or constructive knowledge of the conditions leading to its alleged breach of duties under the Act or common law.

Ultimately, B&H had certain obligations, including to keep the common areas of the Property in a safe, fit, and habitable condition and to "exercise reasonable care to keep the premises in a reasonably safe condition." *Roundtree*, 2024 WL 4866321, at *3. But under Ohio law, B&H can only be held liable for negligence if it had actual or constructive notice of the conditions leading to the alleged violation of its duties. The Management Agreement and B&H's policies add no additional duties relevant to this Ms. Cain's negligence claims.

### C. Constructive Notice

#### i. Standard and Argument

B&H contends, and Ms. Cain does not directly dispute, that B&H lacked actual notice of the allegedly defective condition of the specific stair in question. (B&H Reply, PageID 1689; Cain Reply, 1623.) Instead, Ms. Cain argues that "constructive notice has been conclusively established" because "reasonable jurors could only conclude that the danger posed to tenants and

13

guests by the rundown staircase, as well as the need for immediate repairs, would have been identified in any reasonable inspection." (Cain Reply, PageID 1625.) B&H counters that reasonable inspections occurred and did not reveal the danger. (B&H Reply, PageID 1693.) B&H also argues that, under Ohio law, courts have rejected the position that "a defendant should be charged with constructive notice of an alleged defect if they do not conduct regular[] inspections of a property." (*Id.* PageID 1694.)

Whether a landlord had constructive notice of an allegedly defective or unsafe condition is a question of fact. *See Youngerman v. Meijer, Inc.*, No. 15732, 1996 WL 531628, at *3 (Ohio Ct. App. Sept. 20, 1996). "[G]eneral knowledge of the possibility of a defect does not rise to the level of either actual or constructive notice." *Burnworth v. Harper*, 672 N.E.2d 241, 244–45 (4th Dist. Ohio Ct. App. 1996) (holding that "[the defendants'] knowledge that fumes from a space heater could be dangerous to a tenant [did] not provide the requisite notice of a defect in the heaters [that] produced carbon monoxide"). Rather, whether B&H had constructive notice potentially giving rise to liability for negligence under Ohio law depends on whether the B&H "should have known of factual circumstances that caused a violation of [its] duty under [Ohio Rev. Code §] 5321.04(A)(3) to keep common areas in a safe condition" or its other duties under the Act or common law. *Rawlings v. Springwood Apartments of Columbus, Ltd.*, 125 N.E.3d 312, 328 (10th Dist. Ohio Ct. App. 2018) (citing *Sikora*, 727 N.E.2d 1277).

### ii.  Evidence on Constructive Notice and Analysis

Evidence in the record establishes that the second-to-last stair failed either when Ms. Cain stepped on it when she descended the staircase around 10:00 PM on August 31, 2021, or before that time. Although it is unclear whether the step entirely split in half longwise when Ms. Cain stepped on it and fell to the ground, photographs taken soon after the incident show that the stair

eventually split into two long pieces. Regardless of whether the step split entirely when Ms. Cain stepped on it or whether it simply collapsed in some other manner at the time and was fully split later on, Ms. Cain's and Ms. White's unrebutted testimony demonstrates that the stair failed and collapsed that night from no more than Ms. Cain's normal use.

As Ms. White testified, the step protruded out at an angle after it broke, and Ms. White had to move it out of the way to get down the stairs to help her sister. She was able to toss it off to the side, meaning it was either completely detached from the frame or was barely attached. From this evidence, a reasonable jury could conclude that the stair was unsafe at the time Ms. Cain stepped on it. A safe step would not collapse or break in such a manner upon typical use. The key question, though, is whether B&H should have known about that unsafe condition.

Testimony by Ms. White, Ms. Cain, and Mr. Beatty reflects that the condition of the staircase on August 31, 2021, was potentially unsafe and that a visual inspection in the weeks before the incident could have revealed that it was unsafe. Photographs taken just days after the incident show that paint on the stairs was worn away, wood on the staircase wall was split and showed signs of rot and mildew, and certain steps had signs of pest infestation. Additionally, Ms. Cain and Ms. White's testimony, supported by photographs taken soon after the incident, demonstrates that the light fixture used to provide safe lighting in the staircase was detached from the wall the night of the incident. Thus, even if the fixture was emitting light on August 31, which Ms. Cain and Ms. White deny, evidence in the record strongly suggests that any light would have been obstructed because the fixture was not properly positioned on the wall. Therefore, if the second-to-last step had a dangerous, possibly visible split in it, the lack of adequate light could have prevented Ms. Cain from seeing that condition as she descended the stairs.

B&H argues that even if the light fixture was out of place, and even if parts of the staircase

had the visible conditions of potential decay as advanced by Ms. Cain, B&H had no duty under Ohio law to discover those conditions through frequent inspections. (B&H Mot., PageID 1570, 1574–75.) B&H is correct that intermediate Ohio appellate courts have held that there is no specific "duty to inspect" to uncover prospective dangers under the Act, but, regardless, B&H still is held to the constructive notice standard under the Act and under common law.

Unrebutted evidence in the record shows that multiple B&H employees visited Hidden Creek on August 2, 2021, four weeks before Ms. Cain's fall. During that visit, Ms. McCormick walked up and down the staircase in question. Based on Mr. Beatty's observation that the decay in the staircase wall (which is occasionally described in the record as a handrail) occurred over months or years, Ms. McCormick would have been able to see that condition of decay. A reasonable jury could conclude that B&H employees, as part of their routine visual inspections, should have seen dangerous conditions including the worn away paint on the stairs, evidence of a potential pest infestation, and loose or creaking stairs. Similarly, although B&H employees testified that they did not actually observe the detached light fixture, a reasonable jury could conclude that B&H should have observed the detached light fixture as part of its typical property management responsibilities. B&H employees also could have observed the allegedly unsafe conditions when showing prospective tenants the property, including when they utilized the showroom apartment located next to the base of the staircase where Ms. Cain fell. (*See* White Dep., 24:9–19.)

Furthermore, Mr. Zimmerman's report details how B&H, in his view, failed to maintain the staircase in a code-compliant manner and how it should have known about the unsafe conditions of the staircase based on a reasonable inspection. B&H argues that Mr. Zimmerman's report is inadequate because he is not an engineer and does not directly offer an opinion about

16

what caused the second-to-last stair to fail or how long the alleged defect existed. (B&H Reply, PageID 1695.) But even if the Court disregards the legal conclusions stated by Mr. Zimmerman regarding building and safety codes, Mr. Zimmerman's report supports Ms. Cain's theories that a reasonable inspection would have revealed the alleged unsafe condition of the staircase. In other words, a reasonable jury could rely on Mr. Zimmerman's experience and opinion regarding whether B&H's inspections and care were sufficient.

As described above, this Court must construe all facts and inferences in a light most favorable to Ms. Cain when deciding B&H's Cross-Motion for Summary Judgment. Taking these facts together in a light favorable to Ms. Cain, a genuine issue of material fact remains for trial regarding whether B&H had constructive notice of the conditions that may have resulted in a breach of its duty to keep common areas safe, to make necessary repairs, to comply with code requirements, or to exercise reasonable care in maintaining the safety of the staircase. *See Rawlings*, 125 N.E.3d at 328 (holding that a genuine issue of material fact existed regarding constructive notice where a parking spot "wheel stop" was out of place in a pedestrian walking area, causing a tenant to trip and fall).

Similarly, construing the facts in a light most favorable to B&H for the purposes of Ms. Cain's Motion for Summary Judgment, the record does not conclusively establish that B&H should have known about the allegedly unsafe conditions. Triable issues of fact remain that a reasonable jury could see either way—therefore, the issue of constructive notice is not suited for summary judgment in this case.

### D. Open-and-Obvious Doctrine

Under Ohio law, a landlord has no duty to warn tenants or guests about "'open and obvious' dangers and thus is not liable for any injuries resulting from such dangers." *Andler v. Clear*

*Channel Broad., Inc.*, 670 F.3d 717, 724–25 (6th Cir. 2012) (citing *Armstrong v. Best Buy Co.*, 788 N.E.2d 1088, 1089–90 (Ohio 2003)). Accordingly, if a danger is "reasonably observable and thus would be seen by someone 'acting with ordinary care under the circumstances,'" a landlord does not have a duty regarding that danger under common law. *Id.* (quoting *Hissong v. Miller*, 927 N.E.2d 1161, 1166 (2nd Dist. Ohio Ct. App. 2010). The Court finds that a genuine issue of material fact remains regarding whether the danger posed by the staircase was open and obvious. Ms. Cain is not entitled to summary judgment regarding duty under common law on that ground.

Regardless, even if the doctrine applied, B&H might still be liable under a negligence *per se* theory, which is not precluded by the open-and-obvious doctrine. *See Mann*, 5 N.E.3d at 600, 602 (holding that a landlord may not rely upon the open-and-obvious doctrine to escape liability where the landlord is negligent *per se*, including where a landlord violates Ohio Revised Code § 5321.04(A)(1), (2), or (3)).

### E.  Duty and Breach Conclusion

B&H had a specific duty under Ohio law to make necessary repairs and to keep common areas safe, violations of which constitute negligence *per se*. *See* Ohio Rev. Code § 5321.04; *Mann*, 5 N.E.3d at 602. Accordingly, if a jury concludes that B&H failed to maintain the safety of the common area staircase or to make necessary repairs to it, or violated § 5321.04 in any other way, B&H's violation would mean it breached a duty of care it owed to Ms. Cain. As described above, Ohio courts analyze the duty and breach question in both the context of the Act and common law by examining whether the landlord had constructive notice of the conditions leading to the alleged violations and breaches. Because the Court concludes that, based on the evidence in the record, reasonable minds can differ about whether B&H had constructive notice, there is also a triable issue of fact regarding breach and whether B&H is excused from its duties for lacking constructive

notice.

## II.     Proximate Cause and Injury

Ms. Cain does not move for summary judgment on the negligence elements of proximate cause and injury, but B&H nonetheless argues that Ms. Cain failed to present evidence of proximate cause. (B&H Mot., PageID 1570–75.) Attached to her Reply brief, Ms. Cain includes a declaration from Dr. Scott Stephens, a physician who specializes in orthopedic surgery and who examined Ms. Cain on February 17, 2023. (Stephens Decl.) Dr. Stephens concluded that Ms. Cain's fall on August 31, 2021, caused her injury including pelvic fractures and lower back and trochanteric pain. (*Id.* PageID 1641.) As a result, she underwent visits to the emergency room, advanced imaging, physical therapy, and transforaminal epidural steroid injections. (*Id.* PageID 1641–42.)

To the extent B&H's argument can be construed as a cross-motion for summary judgment on proximate cause and damages, Ms. Cain's unrebutted evidence is sufficient to create triable issues of fact on those elements, and B&H's cross-motion for summary judgment on those issues is **DENIED**.

## III.     B&H's Affirmative Defenses

Ms. Cain also moves for summary judgment on each of the seventeen affirmative defenses asserted by B&H. (Cain Mot., PageID 1521; *see* Answer, ECF No. 10.) A defendant bears the burden of proof at trial regarding its affirmative defenses. *See Cline v. Dart Transit Co.*, No. 21-3468, 2023 WL 3003190, at *4 (6th Cir. Apr. 19, 2023) (citing *Snyder v. Kohl's Dep't Stores, Inc.*, 580 F. App'x 458, 461 (6th Cir. 2014)).

The Court has already decided above that a genuine issue of material fact remains regarding the open-and-obvious doctrine, one of B&H's affirmative defenses regarding duty. And in

response to Ms. Cain's Motion, B&H has withdrawn its affirmative defenses on service of process, lack of standing or capacity, estoppel, claim splitting, waiver, unclean hands, release, and acquiescence. (Birge Mot., PageID 1579.) The Court assesses B&H's remaining defenses below.

### A. Step in the Dark Rule

Ohio's step-in-the-dark rule relates to the determination of proximate causation. *Clay v. U-Haul Co. of Massachusetts & Ohio Inc.*, No. 2:18-CV-1050, 2019 WL 6496942, at *6 (S.D. Ohio Dec. 3, 2019) (citing *Carter v. Forestview Terrace LLC*, 68 N.E.3d 1284, 1293–94 (8th Dist. Ohio Ct. App. Aug. 4, 2016)). Under the step-in-the-dark rule, "one who, from a lighted area, intentionally steps into total darkness, without knowledge, information, or investigation as to what the darkness might conceal, is guilty of contributory negligence as a matter of law." *Posin v. A.B.C. Motor Ct. Hotel, Inc.*, 344 N.E.2d 334, 338 (Ohio 1976). Ohio courts recognize that "sometimes 'a person's step into the darkness is perfectly reasonable.'" *Carter*, 68 N.E.3d at 1291 (quoting *Tomasko v. Sohnly*, No. 15–CAE–10–0078, 2016 WL 1643036, *4 (5th Dist. Ohio Ct. App. Apr. 21, 2016)). Accordingly, the rule is one of reasonableness: if an injured plaintiff unreasonably stepped into the darkness, their actions might raise an inference that they lacked ordinary care and affect the determination of proximate cause, which is necessary for a landlord's negligence liability. *Id.* at 1292.

Here, a genuine issue of material fact remains regarding whether Ms. Cain reasonably stepped into the darkness of the staircase when she fell and injured herself. Evidence differs regarding the degree of darkness and the condition of the steps in question when Ms. Cain descended them on the night of August 31, 2021. Accordingly, the question remains for the jury about whether Ms. Cain was contributorily negligent in stepping into the darkness and about the overall question of proximate causation. *See Posin*, 344 N.E.2d at 339 (holding that where

"conflicting evidence exists as to . . . the lighting conditions and degree of darkness, the nature and appearance of the premises, or other circumstances, . . . then clearly an inference of contributory negligence does not arise"). Neither party is entitled to summary judgment on the issue of Ms. Cain's alleged contributory negligence or comparative fault.

### B.  Additional Affirmative Defenses

Ms. Cain is entitled to summary judgment on B&H's affirmative defense that Ms. Cain failed to state a claim upon which relief could be granted regarding negligence and negligence *per se*. (Cain Mot., PageID 1522.) As this Court concludes above, Ms. Cain has presented enough evidence to create triable issues of fact, and B&H is not entitled to judgment as a matter of law on those claims. It follows that B&H is not entitled to judgment as a matter of law on grounds of Ms. Cain's failure to state a claim.

Ms. Cain is not entitled to summary judgment on B&H's affirmative defense of failure to mitigate damages. Triable issues of fact remain regarding Ms. Cain's injuries and whether she failed to mitigate damages. And neither party is entitled to summary judgment regarding damage limitations, as the Parties' arguments on that topic are premature.

Last, the Court concludes that Ms. Cain is not entitled to summary judgment on the issues of failure to join necessary and indispensable parties, causes by others whom defendant is not responsible, conduct of third parties, intervening superseding causes, diminishment of liability due to others, proportionate share of liability, allocation of fault, and allocation of liability. Triable issues of fact remain that will determine whether any of these defenses apply.

### CONCLUSION

For the reasons stated in this Opinion and Order, the Court **GRANTS IN PART** and **DENIES IN PART** Ms. Cain's Partial Motion for Summary Judgment (ECF No. 59) and **DENIES**

Birge & Held Property Management, LLC's Cross-Motion for Summary Judgment (ECF No. 66). The Court concludes that triable issues of fact remain regarding Ms. Cain's negligence and negligence *per se* claims. The Court **GRANTS** summary judgment to Ms. Cain on the affirmative defense of failure to state a claim upon which relief can be granted and **DENIES** summary judgment to Ms. Cain regarding B&H's other affirmative defenses.

This case remains open.

**IT IS SO ORDERED.**

**3/11/2025**                                        s/Edmund A. Sargus, Jr.
**DATE**                                             **EDMUND A. SARGUS, JR.**
                                                     **UNITED STATES DISTRICT JUDGE**